UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

INNOVATIVE STRATEGIC
COMMUNICATIONS, LLC,

      Plaintiff,

v.                      Case No.: 8:11-cv-1838-T-33TBM

VIROPHARMA, INCORPORATED,

      Defendant.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendant Viropharma, Incorporated's Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. # 6), filed on October 3, 2011. Plaintiff filed a response in opposition on October 28, 2011. (Doc. # 13). Also before the Court is Defendant's Request for Oral Argument Related to Defendant's Motion to Dismiss (Doc. # 44), filed July 11, 2012. For the reasons that follow, the Motion to Dismiss is granted in part and denied in part and the Request for Oral Argument is denied as moot.

**I.**   **Background**

On or about February 20, 2008, Plaintiff Innovative Strategic Communications, LLC entered into a Master Services Agreement with Defendant Viropharma, Inc. (Doc. # 1 at ¶ 6). Pursuant to the Agreement, Plaintiff was to provide

promotional services for Defendant which included "the preparation of educational exhibits to be used at medical conventions, global medical event management and therapeutic related publications throughout the United States and Europe (the 'Promotional Services')." Id. at ¶¶ 7-8. Under the Agreement, the Promotional Services were to be separately negotiated and contracted for in writing in the form of work orders that were to be submitted to, approved, and signed by Defendant. Id. at ¶ 9. However, Plaintiff alleges that Defendant would also request Plaintiff to perform Promotional Services that were not set forth in work orders executed by Defendant. Id.

On or about October 21, 2010, Defendant requested Plaintiff to prepare a strategic plan for the Promotional Services for the 2011 calendar year. Id. at ¶ 10. Plaintiff "commenced preparation of the Promotional Service Plan [and] researched medical meeting venues for presentation of the Promotional Service Plan, incurring expense and costs associated therewith." Id. After Defendant requested changes to the Promotional Service Plan in November 2010, the parties finalized the 19 medical event venues on January 3, 2011. Id. at ¶¶ 11-12. The first medical event was scheduled to begin on January 23, 2011. Id. at ¶ 12.

On January 5, 2011, Plaintiff submitted a work order to Defendant which "set[] forth the scope of work necessary to complete the Professional Service Plan" and "detailed various medical events that had to be reserved in advance." Id. at ¶ 13. On January 20, 2011, Defendant "informed [Plaintiff] that the work orders were approved" subject to Plaintiff making changes to the scope of services for two medical events and cancelling a third event entirely. Id. at ¶ 14. Plaintiff then submitted a revised work order for signature reflective of this approval ("Work Order No. 2"). Id.

Plaintiff informed Defendant that it needed to immediately commence the work necessary to meet the reservation deadlines in order to ensure Defendant's presence at the medical events pursuant to the Promotional Services Plan. Id. at ¶ 15. Plaintiff alleges that the expedited reservation of meeting space would require substantial advance payment by Plaintiff that would ultimately be invoiced to Defendant under the Agreement. Id. at ¶ 16. Accordingly, Plaintiff advised Defendant that "it was hesitant to make any advance payment without a signed work order" and requested assurance that Defendant would reimburse Plaintiff for any advanced costs. Id. Thereafter, Plaintiff "was informed that the Promotional Service Plan was fully approved and that all

-3-

events were confirmed. [Plaintiff] was also led to believe that its Work Order No. 2 had been approved, requested sign off was just a formality, assurance of payment [could] be assumed and that [Plaintiff] should commence activities to meet the Reservation Deadlines." Id. at ¶ 17.

On February 1, 2011, Defendant requested further work order revisions, and Plaintiff prepared and submitted a revised work order for approval. Id. at ¶ 19. However, Defendant "did not return the executed work orders even though it had approved all work being done by [Plaintiff]." Id. Throughout this time, Plaintiff continued to perform the Promotional Services Plan, and to incur costs and expenses in conjunction with that performance, with the full knowledge of Defendant. Id. at ¶¶ 17, 20.

On February 28, 2011, a coordinator of one of the medical events informed Plaintiff that its reservation deadline had passed and consequently, there was no exhibit space available for Defendant. Id. at ¶ 20. Despite the lack of a signed work order, in order to ensure the performance of the Promotional Service Plan, Plaintiff "in good faith . . . scrambled to find other space at the meeting" for Defendant. Id. However, based on this exhibit issue, which Plaintiff contends was caused solely by Defendant, on March 18, 2011,

-4-

Defendant cancelled all but a few of Plaintiff's activities and terminated the Agreement. Id. at ¶ 21.

Pursuant to Defendant's request, Plaintiff sent close out invoices to Defendant for all work that had been performed through termination. Id. at ¶ 23. However, even after Plaintiff submitted revised invoices at Defendant's request, Defendant has refused to pay the revised invoices, causing damage to Plaintiff, including lost profits. Id. at ¶¶ 22, 25-26.

Plaintiff initiated this action on August 16, 2011, by filing a nine-count Complaint against Defendant, alleging: Breach of Agreement (Count I); Services Rendered (Count II); Unjust Enrichment (Count III); Promissory Estoppel (Count IV); Account Stated (Count V); Open Account (Count VI); Fraud (Count VII); Deceptive and Unfair Trade Practices (Count VIII); and Misappropriation of Trade Secrets (Count IX). Defendant now moves to dismiss each count of the Complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P., or to dismiss the entire Complaint as a "shotgun pleading."

## II.  **Legal Standard**

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth

<u>Telecomms.</u>, 372 F.3d 1250, 1262 (11th Cir. 2004).  Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint.  <u>Stephens v. Dep't of Health & Human Servs.</u>, 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true.").

However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level.

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)(internal citations omitted).  In addition, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986). Furthermore, "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009).

The Court notes that the Motion to Dismiss has not been converted into a motion for summary judgment because the Court

-6-

has not considered matters outside the pleadings.[1] "Rule 7(a) defines 'pleadings' to include both the complaint and the answer, and Rule 10(c) provides that '[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.'" Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) (quoting Fed. R. Civ. P. 7(a) and 10(c)). Thus, the Court may consider the various exhibits attached to the Complaint without converting the Motion to Dismiss into one for summary judgment.

## III. __Analysis__

### A.   __Choice of Law__

The basis of jurisdiction for Plaintiff's claims is diversity.  The Court therefore applies Florida conflict of law rules to determine what law controls substantive issues. "Under Florida law, a court makes a separate choice of law determination with respect to each particular issue under consideration."  Trumpet Vine Invs., N.V. v. Union Capital Partners I, Inc., 92 F.3d 1110, 1115 (11th Cir. 1996).

Defendant argues that "Pennsylvania law applies to

---

[1] When a document outside the pleadings is considered, Federal Rule of Civil Procedure 12(c) requires that "the motion be treated as a motion for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all materials made pertinent by such a motion."

[Plaintiff's] claims because the Agreement includes a Pennsylvania choice-of-law provision." (Doc. # 9 at 7). Indeed, the Agreement states that it "shall be governed by the laws of the Commonwealth of Pennsylvania without regard to the principles of conflict-of-law doctrines of Pennsylvania or any other jurisdiction." (Doc. # 1-1 at §7.4). "Under Florida law, courts will enforce contractual choice of law provisions unless the law of the chosen forum contravenes strong public policy of the forum." Jumpstart of Sarasota, LLC v. ADP Screening & Selection Servs., Inc., No. 8-11-cv-617-T-17TGW, 2011 WL 6132310, at *4 (M.D. Fla. Dec. 9, 2011). The "strong public policy" must be a policy of sufficient importance to outweigh the freedom to contract. Id.

Plaintiff does not raise any argument that the contractual choice-of-law provision in the Agreement violates Florida public policy. Accordingly, the Court will apply the choice-of-law provision by its terms and will evaluate the counts based on the Agreement, including the quasi-contract claims, under Pennsylvania law. See Am. Home Assur. Co. v. Weaver Aggregate Transp., Inc., 773 F. Supp. 1317, 1324 (M.D. Fla. 2011) (holding that Florida's choice of law rules for issues of contract law include claims for unjust enrichment).

However, the Agreement's choice-of-law provision does not

-8-

apply to Plaintiff's tort claims because "claims arising in tort are not ordinarily controlled by a contractual choice of law provision. . . . Rather, they are decided according to the law of the forum state." Dickinson v. Exec. Bus. Grp., Inc., 983 F. Supp. 1395, 1398 (M.D. Fla. 1997)(citations omitted).

In tort cases, Florida applies the "most significant relationship" test outlined in Section 145 of the Restatement (Second) of Conflicts of Laws.[2]  Grupo Televisa, S.A. v. Telemundo Communs. Group, Inc., 485 F.3d 1233, 1240 (11th Cir. 2007)(citing Bishop v. Fla. Specialty Paint Co., 389 So. 2d 999, 1001 (Fla. 1980)).  According to Section 145 of the Restatement, the following factors should be given consideration when determining which state has the most significant relationship to the tort at issue:

(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicil, residence, nationality, place of incorporation and place of business of the parties,

---

[2]Section 145 provides:

The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

Rest. (Second) of Conflict of Laws, § 145(1).

and
(d) the place where the relationship, if any, between the parties is centered.

Rest. (Second) of Conflict of Laws § 145(2).  Section 145(2) also advises that "[t]hese contacts are to be evaluated according to their relative importance with respect to the particular issue." Id.

Regarding the third and fourth factors, the Court agrees with Plaintiff that the factors weigh equally between Pennsylvania and Florida and, thus, are inconclusive for determining choice of law.  Regarding the first factor, any injuries resulting from the torts alleged in the Complaint -- fraud, deceptive and unfair trade practices, and misappropriation of trade secrets -- would be pecuniary in nature, and as such would be felt "most severely at the plaintiff's headquarters or principal place of business." Id. at § 145, cmt. f; see Grupo Televisa, S.A. v. Telemundo Comm. Grp., Inc., 485 F. 3d 1233, 1241 (11th Cir. 2007)(finding that the district court appropriately determined the place of injury for a misappropriation of trade values tort claim to be the plaintiff's headquarters).  Thus, the Court considers Florida, the location of Plaintiff's principal place of business, to be the place of injury.

Regarding the second factor, Plaintiff argues that the

-10-

place where the conduct causing the injury occurred is also Florida because the representations allegedly made by Defendant "were sent to [Plaintiff's] employees at their offices in Florida." (Doc. # 13 at 2). Plaintiff's argument is incorrect. Rather, the Court finds that Defendant's conduct causing the injury occurred at the place where Defendant was located at the time it engaged in such conduct, not the place where the conduct was directed, sent or received.

The Complaint and the Agreement attached as an exhibit thereto indicate that work orders and invoices for work performed were to be submitted to Defendant at its offices in Exton, Pennsylvania, for approval and payment. (Doc. # 1-1). Further, it was at those offices where Defendant allegedly made false misrepresentations to Plaintiff regarding the work orders and refused to pay the submitted invoices, which actions constitute the basis of Plaintiff's tort claims. Plaintiff does not allege that Defendant was in Florida when it engaged in the allegedly injurious conduct, nor that Defendant was anywhere else besides its office in Pennsylvania when the conduct occurred. Accordingly, the Court finds that Defendant engaged in the allegedly injurious conduct at Defendant's headquarters in Pennsylvania.

At this point, the factors appear to be in equipoise. However, for intentional tort claims such as those alleged in this case, the Eleventh Circuit has instructed that "the principal location where the defendant's conduct occurred would be the single most significant 'contact' in this type of case." Grupo Televisa, 485 F.3d at 1246 (quoting Rest. (Second) of the Conflict of Laws § 145(2) cmt. f). Accordingly, the Court finds that the place of Defendant's conduct -- Pennsylvania -- is the most important factor in this choice of law analysis and militates a finding that Pennsylvania has the most significant relationship to the events at issue. Thus, the Court will also apply Pennsylvania law to Plaintiff's tort claims.

**B.   Count I - Breach of Agreement**

To state a claim for breach of contract, Pennsylvania law requires a plaintiff to establish "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003). Plaintiff alleges that it entered into the Agreement with Defendant, that the parties modified the Agreement at various times during the term of the Agreement, that Defendant breached the Agreement and subsequent modifications by failing

to pay Plaintiff for various services performed, and that Plaintiff has been damaged by Defendant's breach of the Agreement and subsequent modifications. (Doc. # 1 at ¶¶ 31-35). Accordingly, Plaintiff has sufficiently alleged a prima facie claim for breach of contract.

However, Defendant contends that Plaintiff cannot show a breach of the Agreement because the Agreement required all work orders to be signed prior to Plaintiff performing the work order. Because Work Order No. 2 was never signed by Defendant prior to Plaintiff performing the services, Defendant contends that its duty to pay for the work Plaintiff performed was never triggered.

The Agreement does require a work order to be signed before Plaintiff is authorized to commence work under it. (Doc. # 1-1 at ¶ 1.2). However, the Complaint alleges that "[a]t various times during the term of the Agreement, the parties modified the Agreement." (Doc. # 1 at ¶ 32). Although the Agreement requires all modifications to be made in writing, (Doc. # 1-1 at 7.4), under Pennsylvania law, "a written contract which is not for the sale of goods may be modified orally, even when the written contract provides that modifications may only be made in writing." Somerset Cmty. Hosp. v. Allan B. Mitchell & Assocs., 685 A.2d 141, 146 (Pa.

Super. 1996).  Thus, Plaintiff argues that the parties orally modified the Agreement's signed authorization requirement such that Defendant is still required to pay for the work Plaintiff performed on the unsigned Work Order No. 2.

To this contention, Defendant argues that Plaintiff cannot provide sufficient evidence to prove an oral modification of the Agreement's written authorization requirement.  Under Pennsylvania law, "[a]n oral waiver or modification of a written contract must be proved by clear, precise and convincing evidence, including conduct by the parties that 'clearly shows the intent to waive the requirement that the amendments be made in writing.'" MDNet, Inc. v. Pharmacia Corp., 147 F. App'x 239, 244 (3d Cir. 2005)(quoting Somerset Cmty. Hosp., 685 A.2d at 146).

Although recognizing the standard Plaintiff must ultimately meet to prove its allegations of an oral modification, the Court is not convinced that Plaintiff must satisfy this standard in its initial pleading in order to withstand a motion to dismiss.  Rather, the Court finds that this issue is better suited for resolution at the summary judgment stage when the Court may evaluate the evidence on file, including deposition testimony and discovery responses, in order to ascertain the merits of the dispute.  The Court

-14-

may not conduct that sort of analysis here, at the motion to dismiss stage, where Plaintiff is not required to support the Complaint allegations with items of proof.

Count I complies with Rule 8(a)(2), Fed.R.Civ.P., in that it contains a "short and plain statement of the claim showing that the pleader is entitled to relief."  In addition, Count I contains factual allegations that raise Plaintiff's right to relief above the speculative level and state a claim that is plausible on its face.  Accordingly, the Court denies the Motion to Dismiss as to Count I.

### C.   Count II - Services Rendered

Plaintiff alleges a claim for services rendered in Count II and a claim for unjust enrichment in Count III.  However, Pennsylvania courts do not appear to recognize a separate cause of action for services rendered, but instead treat those claims as claims for unjust enrichment. See Mitchell v. Moore, 729 A.2d 1200, 1203 (Pa. Super. 1999)("[Plaintiff's] claim for restitution for services rendered lies not upon an express contract or written agreement, but, rather, upon the equitable theory of unjust enrichment.").  Therefore, the Court finds that Count II for services rendered is duplicative of Count III for unjust enrichment and dismisses it accordingly.  The Court will address the merits of Plaintiff's unjust enrichment

-15-

claim separately below.

D.   **Count III - Unjust Enrichment**

Defendant argues that Plaintiff's claim for unjust enrichment fails based on Pennsylvania law's "long-standing, bright-line rule that 'the doctrine of quasi-contract . . . is inapplicable where a written or express contract exists." (Doc. # 6 at 12)(quoting Lackner v. Glosser, 892 A.2d 21, 34 (Pa. Super. 2006)).   While Defendant's statement of the general rule is accurate, Pennsylvania courts allow a party to plead an unjust enrichment claim in the alternative with a breach of contract action, in order to allow recovery under the former theory where an express contract cannot be proven under the latter.   Lugo v. Farmers Pride, Inc., 967 A.2d 963, 970 (Pa. Super. 2009).   In other words, Pennsylvania courts allow an unjust enrichment claim to be pled in the alternative where the enforceability or validity of a written contract is in dispute.   See Hudak v. Bobitski, No. 09-1172, 2010 WL 5439791, at *3 (W.D. Pa. Dec. 28, 2010)(denying summary judgment on unjust enrichment claim where there was a factual issue regarding the enforceability of a written contract); 18 KT.TV, LLC v. Entest Biomedical, Inc., No. 3:11-cv-244, 2011 WL 5374515, at *6 (M.D. Pa. Nov. 7, 2011)(declining to dismiss unjust enrichment claim where the validity of a contract was

-16-

disputed).   However,   although   "breach   of   contract   may   be pleaded alternatively with a claim of unjust enrichment, . . . recovery may not be had for both unjust enrichment and the [breach of contract] claim[]." Id. at 970.

In   the   Complaint,   Plaintiff   alleges   that   "at   various times during the term of the Agreement, the parties modified the Agreement" and bases its claims for payment on these alleged modifications. (Doc. # 1 at ¶¶ 32-34).   Defendant, however, denies that any such modifications were made to the Agreement. (Doc. # 6 at 9). Accordingly, the Court finds that a dispute does exist as to the existence, validity, and enforceability of any modifications to the Agreement and, as such, Plaintiff may bring an alternative cause of action for unjust   enrichment   despite   the   existence   of   the   written Agreement between the parties.

To state a cause of action for unjust enrichment under Pennsylvania law, the Plaintiff must allege: "(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable   for   defendant   to   retain   the   benefit   without payment of value." Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 180 (3d Cir. 2008)(citing Limbach Co. LLC

-17-

<u>v. City of Philadelphia</u>, 905 A.2d 567, 575 (Pa. Cmwlth. 2006)).

Defendant argues that Plaintiff has failed to plead that Defendant received any benefit from Plaintiff because Plaintiff did not plead that any of the meetings it scheduled for Defendant actually took place, but instead alleges that at least one of the meetings actually did not take place. (Doc.# 6 at 13). Thus, Defendant argues that it "obtained no benefit from any of the work [Plaintiff] allegedly completed" such that Plaintiff's unjust enrichment claim should be dismissed. <u>Id.</u>

However, despite Defendant's argument to the contrary, Plaintiff has expressly alleged that it "provided a variety of Promotional Services" to Defendant, that Defendant "benefitted from the Promotional Services," and that Defendant "voluntarily accepted and retained the benefit conferred." (Doc. # 1 at ¶¶ 49-51). Plaintiff also contends that "the circumstances are such that it would be inequitable for [Defendant] to retain the benefit without paying the value thereof to [Plaintiff]." <u>Id.</u> at ¶ 52. The Complaint also contains numerous other detailed factual allegations regarding work Plaintiff performed on Defendant's behalf for which Plaintiff did not receive payment. <u>Id.</u> at ¶¶ 10-26.

Accordingly, accepting Plaintiff's allegations as true, the Court finds that Plaintiff has adequately alleged the elements of an unjust enrichment claim, including sufficiently alleging how Defendant benefitted from Plaintiff's actions. Plaintiff need do no more to survive a motion to dismiss. Whether Plaintiff can actually prove the elements of the cause of action based on the evidence in this case, as Defendant contends it cannot, is more appropriately considered at the summary judgment stage. Thus, the Court denies Defendant's Motion to Dismiss as to Count III.

### E.   Count IV - Promissory Estoppel

"In order to maintain an action in promissory estoppel, the aggrieved party must show that: 1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; 2) the promisee actually took action or refrained from taking action in reliance on the promise; and 3) injustice can be avoided only by enforcing the promise." Crouse v. Cyclops Indus., 745 A.2d 606, 610 (Pa. 2000). The Court finds that Plaintiff has sufficiently alleged each of the elements to state a cause of action for promissory estoppel.

However, Defendant argues that Count IV should be dismissed because it is a quasi-contract claim, and as such,

-19-

cannot survive where there is a written contract. Defendant also argues that the promissory estoppel claim should be dismissed because Plaintiff cannot show that it reasonably relied on Defendant's purported promises to pay for Plaintiff's work because the Agreement required authorization for that work to be in writing. The Court finds these arguments unpersuasive.

The Court first notes that Defendant's argument misstates the rule -- under Pennsylvania law, to satisfy the second element of a promissory estoppel claim, Plaintiff must allege only that it *actually* relied on Defendant's promise, not that its reliance was reasonable. See Crouse, 745 A.2d at 610. Plaintiff has alleged this fact. (Doc. # 1 at ¶ 56). On the other hand, reasonableness is a factor in the first element -- whether Defendant should have reasonably expected its promise to induce Plaintiff to act. Acknowledging that Pennsylvania courts sometimes similarly blur these elements, see MDNet, Inc., 147 F. App'x at 244, the Court will analyze Defendant's reasonableness argument as it applies to the first element rather than the second.

In Kreutzer v. Monterey County Herald Co., 747 A.2d 358, 362 (Pa. 2000), the Pennsylvania Supreme Court ruled that an estoppel claim may be maintained even where there is a written

-20-

contract because "under the estoppel concept, a contract may be modified if either words or actions of one party to the contract induce another party to the contract to act in derogation of the contract, and the other justifiably relies upon the words or deeds of the first party." Accordingly, although there is a written contract in this case which required prior written authorization for all work, a jury could find that Defendant's promises caused Plaintiff to act in derogation of the Agreement's written authorization requirement and that Defendant should have reasonably expected Plaintiff to act in such derogation of the Agreement. Thus, the Court declines to dismiss Count IV at this stage of the proceedings on this basis.

### F.   Count V - Account Stated

Under Pennsylvania law, an account stated is an "account in writing, examined and accepted by both parties, which acceptance need not be expressly so, but may be implied from the circumstances." Citibank (South Dakota) N.A. v. Ambrose, No. 10-S-574, 2010 WL 3923159, at *1 (Pa. Com. Pl. June 8, 2010) (quoting Robbins v. Weinstein, 143 Pa. Super. 307 (1941)).

Defendant argues that Plaintiff's account stated claim is precluded by the existence of the written Agreement. The

Court disagrees.  In <u>Richburg v. Palisades Collection LLC</u>, 247
F.R.D. 457, 465 (E.D. Pa. 2008), the court explained that an
"account stated cause of action is new and independent from
. . . the specific contract action(s) one could bring on the
underlying transactions." Therefore, the Court declines to
dismiss Count V on this basis.

To plead a cause of action for account stated under
Pennsylvania law, Plaintiff must plead the following elements:
(1) there has been a running account, (2) a balance remains
due, (3) the account has been rendered upon the defendant, and
(4) the defendant has assented to the account. <u>Citibank (South
Dakota) N.A. v. King</u>, No. 2007-3412, 2007 WL 4967502, at *1
(Pa. Com. Pl. Nov. 9, 2007) (citing <u>Rush's Serv. Ctr., Inc. v.
Genareo</u>, No. 815 of 1990, 1991 WL 338317 (Pa. Com. Pl. June
24, 1991)).  Additionally, "a copy of said account [must be]
attached to the complaint." <u>Rush's Serv. Ctr., Inc.</u>, 1991 WL
338317, at *1.

Here, Plaintiff has alleged that Plaintiff and Defendant
"had previous transactions wherein [Plaintiff] would provide
the Promotional Services and [Defendant] would pay invoices
submitted by [Plaintiff] reflecting the Promotional Services."
(Doc. # 1 at ¶ 61).  The Court finds this allegation
sufficient to satisfy the first element, the existence of a

running account.   Next, Plaintiff alleges that the parties
"previously agreed that the balance of work done for the
Promotional Services was correct and due."  Id. at ¶ 62.  The
Court finds this allegation sufficient to satisfy the second
and fourth elements of the cause of action.   Finally,
Plaintiff alleges that Defendant "made both an express and
implied promise[] to pay the balance upon submission of the
Invoices" but "has failed to pay the balance of the Invoices."
Id. at ¶¶ 63-64.  Such an allegation is sufficient to satisfy
the third element, that the account was rendered upon the
Defendant.   Finally, Plaintiff has attached a copy of the
unpaid invoices to the Complaint.   Accordingly, the Court
finds that Plaintiff has sufficiently pled a claim for account
stated.

Defendant's arguments regarding this cause of action go
to the truth of the allegations, in particular, whether the
facts show that Defendant actually assented to the correctness
of the invoices.   Such an argument is not appropriately
considered by the Court on a motion to dismiss where the Court
is called upon only to determine the sufficiency of the
allegations in the Complaint and must accept them as true.
Accordingly, upon finding that Plaintiff has adequately
alleged each of the elements of an account stated cause of

action, the Court denies the Motion to Dismiss as to Count V.

### G.   Count VI - Open Account

Defendant argues that Count VI should be dismissed on the basis that Pennsylvania does not recognize an open account cause of action.  Plaintiff does not refute this argument in its response, nor otherwise mention Count VI, and thus appears to concede that Count VI is not a valid claim under Pennsylvania law.  The Court agrees with Defendant that Pennsylvania courts do not recognize an open account cause of action and accordingly, grants the Motion to Dismiss as to Count VI.

### H.   Count VII - Fraud

Plaintiff alleges a claim for common law fraud in Count VII.  Specifically, Plaintiff alleges that Defendant made deliberately false material statements in the "Representations" that Defendant knew were false, that Defendant intended for Plaintiff to rely on the Representations, and that Plaintiff did in fact rely on the Representations to its detriment.  Id. at ¶¶ 75-81.  The Representations are described in the Complaint as follows:

> [Plaintiff] was informed that the Promotional Service Plan was fully approved and that all events were confirmed.  [Plaintiff] was also led to believe that its Work Order No. 2 had been approved, requested sign off was just a formality,

> assurance of payment can be assumed and that
> [Plaintiff] should commence activities to meet the
> Reservation Deadlines. In the meantime, [Plaintiff]
> was incurring costs and expense in performing the
> Promotional Service Plan (collectively, the
> "Representations").

<u>Id.</u> at ¶ 17.

Defendant argues that Count VII is barred by Pennsylvania's "gist of the action" doctrine.  The Court agrees.

Under Pennsylvania law, "a cause of action framed as a tort but reliant upon contractual obligations will be analyzed to determine whether the cause of action properly lies in tort or contract." <u>Autochoice Unlimited, Inc. v. Avangard Auto Fin., Inc.</u>, 9 A.3d 1207, 1212 (Pa. Super. 2010). "In general, courts are cautious about permitting tort recovery based on contractual breaches. In keeping with this principle, [Pennsylvania courts have] recognized the 'gist of the action' doctrine, which operates to preclude a plaintiff from re-casting ordinary breach of contract claims into tort claims." <u>Hart v. Arnold</u>, 884 A.2d 316, 339 (Pa. Super. 2005).

Further, "the important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus. In other

words, a claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts." Etoll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10, 14 (Pa. 2002)(internal citations and quotations omitted). "Where fraud claims are intertwined with breach of contract claims and the duties allegedly breached are created and grounded in the contract itself, the gist of the action is breach of contract. Thus, claims of fraud in the performance of a contract are generally barred under the gist of the action doctrine." Hart, 884 A.2d at 340 (citations omitted).

The court in McCloskey v. NovaStar Mortg., Inc., No. 05-1162, 2007 WL 320287, at *7 (E.D. Pa. Jan. 29, 2007), considered a similar factual scenario and reached the same conclusion. In McCloskey, the counterdefendant, NovaStar, agreed to provide truthful information in a loan application that the counterclaimant, McCloskey, agreed to then process for a loan. Id. However, McCloskey made fraudulent misrepresentations in the application, which then triggered NovaStar's duty to perform, after which NovaStar brought claims for both breach of contract and fraud. Id. The McCloskey court dismissed the fraud claim based on the gist of the action doctrine, finding as follows:

-26-

> In the tort counterclaims, NovaStar does not contend that it was fraudulently induced into agreeing to the contract terms. Rather, NovaStar contends that Mr. McCloskey's fraudulent performance of his duties under the contract caused NovaStar to perform its duties under the contract. NovaStar alleges that Mr. McCloskey made a misrepresentation in the performance of the contract which caused it to suffer damages. . . . [T]his merely restates the breach of contract claim.

Id.

Similarly, in the instant case, Plaintiff's claim of fraud is based on the Defendant's fraudulent "Representations" that caused Plaintiff to perform under the Agreement. Such a claim is integrally related to Plaintiff's breach of contract claim. The performance duties -- including Defendant's duty to approve work prior to Plaintiff's performance and the appropriate method or form of such approval, as well as Plaintiff's duty to perform approved work -- were created and grounded in the requirements of the Agreement itself. Further, Plaintiff's fraud claim essentially duplicates its breach of contract claim and the success of its fraud claim is wholly dependent on the terms of the contract. Thus, the Court finds that Plaintiff's fraud claim is barred under the gist of the action doctrine because it is not collateral to the contract which is the main cause of action. Count VII is dismissed accordingly.

**I.   Count VIII - Deceptive and Unfair Trade Practices**

In Count VIII, Plaintiff alleges a violation of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA), § 501.201 et seq., Fla. Stat.  However, as explained above, the Court has determined that Pennsylvania law governs Plaintiff's tort claims; thus, Plaintiff's deceptive and unfair trade practices claim is more appropriately brought under the analogous Pennsylvania deceptive practices act, Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. §§ 201-1 et seq., Pa. Stat.  See Montgomery v. New Piper Aircraft, Inc., 209 F.R.D. 221, 225-26 (S.D. Fla. 2002) (holding that because Texas law applied to all tort claims, plaintiff's unfair trade practices claim was more appropriately brought under the analogous Texas statute and, consequently, plaintiff lacked standing to bring a claim under FDUTPA). However, under either statute, for similar reasons, Plaintiff's deceptive and unfair trade practices claim is due to be dismissed.

**1.   UTPCPL**

Under Pennsylvania's UTPCPL:

any person **who purchases or leases goods or services** primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by

-28-

> any person of a method, act or practice declared
> unlawful by . . . this act, may bring a private
> action to recover actual damages or one hundred
> dollars ($100), whichever is greater.

73 P.S. § 201-9.2, Pa. Stat. (emphasis added).

While Plaintiff, a limited liability company, would be considered a "person" under the terms of the statute, the Court finds that Plaintiff is not a person "who purchases or leases goods or services," and as such, lacks standing to bring a UTPCPL claim.  See 73 P.S. § 201-2, Pa. Stat. (defining "person" to mean "natural persons, corporations, trusts, partnerships, incorporated and unincorporated associations, and any other legal entities"). As explained in DeFazio v. Gregory, 836 A.2d 935, 939 (Pa. Super. 2003):

> [t]he terms of the UTPCPL sections are unambiguous.
> Section 201.7 protects the "buyer" who purchases
> goods or services at the buyer's residence. Though
> the UTPCPL does not define the term "buyer," we can
> be certain that it does not mean seller.
> Furthermore, we conclude that "purchases" in
> Section 201-9.2 cannot be defined as "sells."
> Therefore, we hold that a seller cannot bring a
> private action under Section 201-9.2.

Id.

In this case, Plaintiff contracted to "provide services for the purpose of supporting the promotional efforts of [Defendant]" for which Plaintiff was to receive payment from Defendant. (Doc. # 1 at ¶¶ 7, 23, 26). Nowhere does the

-29-

Complaint allege, nor does the Agreement show, that Plaintiff contracted to buy any goods or services from Defendant. Accordingly, based on the allegations in the Complaint, the Court cannot agree that Plaintiff was anything other than a seller in this transaction.[3]   Thus, Plaintiff does not have standing to bring a claim against Defendant for violation of the UTPCPL, and Count VIII is appropriately dismissed.

### 2.   FDUTPA

To the extent that Plaintiff would dispute the application of Pennsylvania law to Count VIII and would argue that the provisions of FDUTPA are broader and should apply, the Court finds that Plaintiff also lacks standing to bring such a claim under FDUTPA.

By its terms, FDUTPA was enacted to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or

---

[3]   Because the Court finds that Plaintiff is not a "buyer" under the UTPCPL, the Court need not analyze the next requirement of the statute regarding whether the purchase of any goods or services was "primarily for personal, family or household purposes," although the Court doubts such a finding would be possible in this case given that both parties are commercial entities.   See Balderston v. Medtronic Sofamor Danek, Inc., 285 F.3d 238, 242 (3d Cir. 2002)("In construing claims under the [UTP]CPL, Pennsylvania courts have distinguished purchases made for business reasons, which are not actionable, from those made for 'personal, family or household use.'")(citations omitted).

unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202, Fla. Stat. Defendant argues that this count must be dismissed because Plaintiff is not a "consumer" in the transaction at issue, and as such, does not have standing to pursue a claim for violation of FDUTPA. (Doc. # 6 at 18). In response, Plaintiff argues that FDUTPA was amended in 2001 to allow any "person" to bring a claim for violation of the statute, which eliminated the requirement that the Plaintiff must be a "consumer." (Doc. # 13 at 8).

While it is true that the statute's original scope has been broadened by subsequent amendments and that the term "consumer" has been replaced by other terms in various places, "the legislative history indicates that these changes were intended only to clarify that both persons harmed in consumption and business entities harmed by competitor's anti-competitive acts, may maintain an action if they were harmed by an act in violation of FDUTPA." In re Miller, 418 B.R. 406, 411 (Bankr. N.D. Fla. 2009); see Fla. H.R. Comm. Council for Competitive Commerce, HB 685 (2001) Staff Analysis (Mar. 16, 2001; Apr. 18, 2001) (explaining that the 2001 changes to FDUTPA's provisions for a private right of action were only intended to clarify that the remedies available to individuals

are also available to businesses harmed by a violation of FDUTPA).   However, "[t]he changes have not expanded the statute to include an action brought by a seller harmed by a buyer's unscrupulous acts."   In re Miller, 418 B.R. at 411; see In re Maxxim Med. Grp., Inc., 434 B.R. 660, 693 (Bankr. M.D. Fla. 2010)("In this case, [debtor] has no standing to maintain a claim against [d]efendants under the FDUTPA because [debtor] was not acting as a consumer or purchaser of goods or services in its dealings with [defendants].").

Again, as explained above, based on the allegations in the Complaint, Plaintiff cannot be said to be anything other than a seller in this transaction.   Thus, even under the broadened scope of FDUTPA, Plaintiff does not have standing to bring a claim against Defendant for violation of the statute. Accordingly, the Court finds it appropriate to dismiss Count VIII of the Complaint.

## J.   Count IX - Misappropriation of Trade Secrets

In Count IX, Plaintiff alleges a claim for misappropriation of trade secrets in violation of the Florida Uniform Trade Secrets Act, § 688.01 et seq., Fla. Stat. Pennsylvania has enacted the identical Uniform Trade Secrets Act in 12 Pa.C.S.A. § 5301, Pa. Stat.   As Pennsylvania law applies to Plaintiff's tort claims, the Court will construe

the count as brought under the Pennsylvania Uniform Trade Secrets Act and will not dismiss the count for lack of standing under the Florida statute.

Defendant argues that Count IX should be dismissed because "[n]owhere in its Complaint does [Plaintiff] allege any facts that identify a trade secret, let alone plead that any . . . trade secret was misappropriated by [Defendant]." (Doc. # 6 at 19).  Section 12 Pa. C.S.A. § 5302, Pa. Stat., defines a "trade secret" as:

> [i]nformation, including a formula, drawing, pattern, compilation including a customer list, program, device, method, technique or process that: (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; [and] (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Id.

Defendant's arguments to the contrary, Plaintiff describes its trade secrets in the Complaint as "information, formulas, patterns, compilations, programs, devices, methods, techniques, seminar lists, customer lists, promotional material, processes and other portions in whole or in part of the Promotional Services."  (Doc. # 1 at ¶ 95).  Plaintiff also alleges that the trade secrets "derive independent value,

-33-

both actual and potential, from not being generally known to, and not being readily ascertainable by proper means, by other persons such as [Defendant] and its employees, who can obtain economic value from their disclosure and use." Id. at ¶ 96. Further, Plaintiff specifically alleges that "[Defendant] misappropriated the Trade Secrets through improper means." Id. at ¶ 98.

To survive a motion to dismiss, Plaintiff is not required to plead its trade secrets claim with specificity. See Orthovita, Inc. v. Erbe, No. 07-2395, 2008 WL 423446, *9 (E.D. Pa. Feb. 14, 2008)("[C]ourts are in general agreement that trade secrets need not be disclosed in detail in a complaint alleging misappropriation for the simple reason that such a requirement would result in public disclosure of the purported trade secrets."). Accordingly, the Court finds that Plaintiff has sufficiently alleged a cause of action for misappropriation of trade secrets and denies the Motion to Dismiss as to Count IX.

Additionally, as with Plaintiff's fraud claim, Defendant argues that the gist of the action doctrine likewise bars Plaintiff's trade secrets claim. While it is true that Pennsylvania courts have applied the gist of the action doctrine to bar trade secrets claims where a contract

expressly includes the trade secrets at issue, such courts allow trade secrets claims to go forward where some or all of the misappropriated trade secrets are not covered by the contract. See Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 106-07 (3d Cir. 2001)(setting aside a verdict on plaintiff's misappropriation of trade secrets claims for a determination on remand of only those trade secrets not covered by the parties' written contract).

Here, the Agreement does include provisions regarding the parties' "Work Product" and "Confidential Information" which may include some or all of the information Plaintiff claims constitutes its trade secrets. However, at this preliminary stage and based only on the allegations in the Complaint, the Court cannot say which, if any, of Plaintiff's alleged trade secrets claims may be covered by the Agreement and thus precluded by the gist of the action doctrine. Such argument is better suited for resolution at the summary judgment stage, when the Court has the luxury of evaluating the evidence on file in order to ascertain the merits of the dispute. Accordingly, the Court declines to dismiss Count IX of the Complaint.

### K.   **Shotgun Pleadings**

Finally, Defendant argues that Counts II through IX

-35-

should be dismissed as "shotgun pleadings." (Doc. # 6 at 11).

As Defendant correctly notes, "[s]hotgun pleadings are those

that incorporate every antecedent allegation by reference into

each subsequent claim for relief or affirmative defense."

Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1279

(11th Cir. 2006).  In other words,

> [t]he typical shotgun complaint contains several
> counts, each one incorporating by reference the
> allegations of its predecessors, leading to a
> situation where most of the counts (i.e., all but
> the first) contain irrelevant factual allegations
> and legal conclusions.  Consequently, in ruling on
> the sufficiency of a claim, the trial court must
> sift out the irrelevancies, a task that can be
> quite onerous.

Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.,

305 F.3d 1293, 1295 (11th Cir. 2002).

However, unlike in the typical shotgun pleading, Counts

II through IX of the Complaint do not impermissibly

incorporate by reference the allegations of each and every

preceding Count. Rather, each Count incorporates by reference

only the general and factual allegations contained in

paragraphs 1 through 28 that are common to all of the Counts.

Accordingly, the Court declines to dismiss the Complaint on

this basis.

Accordingly, it is

**ORDERED, ADJUDGED** and **DECREED:**

-36-

(1)   Defendant Viropharma, Incorporated's Motion to Dismiss
      the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)(Doc.
      # 6) is **GRANTED** as to Counts II, VI, VII, and VIII of the
      Complaint and **DENIED** as to Count I, III, IV, V, and IX of
      the Complaint.

(2)   Defendant Viropharma, Inc.'s Request for Oral Argument
      Related to Defendant's Motion to Dismiss (Doc. # 44) is
      **DENIED AS MOOT.**

      **DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>3rd</u>
day of August, 2012.


                              VIRGINIA M. HERNANDEZ COVINGTON
                                 UNITED STATES DISTRICT JUDGE


Copies:  All Counsel of Record


                              -37-